UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

GWENDOLYN BUTLER,
an individual,

       Case No.:

     Plaintiff,

v.

AMERICAN EXPRESS
COMPANY,
a foreign profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

     Defendants.

_____/

## COMPLAINT

**COMES NOW**, Plaintiff, GWENDOLYN BUTLER (hereinafter, "Plaintiff"),

by and through the undersigned counsel, and hereby sues Defendants, AMERICAN

EXPRESS COMPANY (hereinafter, "Amex"), EQUIFAX INFORMATION

SERVICES LLC (hereinafter, "Equifax"), EXPERIAN INFORMATION

SOLUTIONS, INC., (hereinafter, "Experian"), and TRANS UNION LLC

(hereinafter, "Trans Union") (hereinafter collectively, "Defendants").  In support

thereof, Plaintiff states:

## PRELIMINARY STATEMENT

1.     This is an action for damages brought by an individual consumer for damages for Amex's violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Amex improperly credit-reported and subsequently verified objectively-inaccurate information related to a consumer debt account allegedly owed to Amex, respectively, on Plaintiff's consumer credit report and in Plaintiff's consumer credit file as maintained by Equifax, Experian, and Trans Union.

2.     Furthermore, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union continued to incorrectly report such accounts as derogatory, negative, or adverse accounts despite Plaintiff's repeated disputes to Equifax, Experian, and Trans Union explaining and proving that such account should be reported accurately and/or as disputed.

## JURISDICTION, VENUE & PARTIES

3.     Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681, *et seq*.

4.     Jurisdiction and venue for purposes of this action are conferred by Florida Statutes, Section 559.77.

5.     Defendants are subject to the jurisdiction of this Court, as Amex, Equifax, Experian, and Trans Union each regularly transact business in this District.

6.     Venue is proper in this District as Amex regularly conducts business in this District, and the acts and transactions described herein occur in this District.

7.   At all material times herein, Plaintiff is a natural person residing in Orange County, Florida.

8.   At all material times herein, Amex is a Florida limited liability company with its principal place of business located at C T Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

9.   At all material times herein, Equifax is a foreign limited liability company existing under the laws of the State of Georgia, with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

10.   At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.   At all material times herein, Trans Union a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 W. Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

12.   Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

13.   Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible*

*accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

14.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute. *Id.* at § i(a).

15.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer. *Id.* at § i(a)(4).

16.     Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation. *Id.* at § i(a)(5).

17.     Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting

agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis. *Id.* at § s-2(b).

18.     Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees. *Id.* at § n.

19.     Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o.

**GENERAL ALLEGATIONS**

20.     At all material times herein, Plaintiff is a "consumer" as defined by the FCRA, Section 1681a(c) because she is an individual and allegedly obligated to pay a debt.

21.     At all material times herein, Amex, themself and through their subsidiaries, regularly services consumer credit and credit-reports information

associated with the same in Orange County, Florida.

22.    At all material times herein, Amex is a "person" who furnishes information to credit reporting agencies as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

23.    At all material times herein, Amex reports information concerning consumer loan accounts to Equifax, Experian, and Trans Union, including but not limited to, tradeline accounts related to an Amex Account referenced by account number ending -8763 (hereinafter, the "Account").

24.    Amex failed to accurately report the Account with an accurate balance to Equifax, Experian, and Trans Union, and instead reported the Account as an open payment obligation belonging to Plaintiff with an incorrect highest balance of approximately $11,000.00.

25.    At all material times herein, Amex furnished incorrect and/or incomplete information concerning the Account to Equifax, Experian, and Trans Union—continuing after Plaintiff's repeated disputes—despite Amex being informed that the balance on the Account was incorrect.

26.    Amex furnishes, reports, and publishes specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit, employment, housing, or insurance.

27.    At all material times herein, Equifax, Experian, and Trans Union are

each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax, Experian, and Trans Union disburse such consumer reports to third parties under contract for monetary compensation.

28.    At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

29.    All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## FACTUAL ALLEGATIONS

30.    On or about September 2021, Plaintiff opened the credit Account with Amex. Plaintiff used the Account without any problem for months and made her monthly payments in a timely manner, never acquiring a past-due balance or late payments.

31.    On or about September 2022, Amex inadvertently charged Plaintiff's Account two credits that added up to approximately $3,800.00.

32.    Plaintiff disputed the charges and was electronically refunded $3,602.72 to her Account on or about October 2022.

33.    As a result of this this billing error by Amex, Amex began reporting the Account inaccurately to the national credit bureaus.

34.    More specifically, Amex reported the Account with a high balance of

approximately $11,000.00 for several months despite Plaintiff never having obtained that high balance through any action of her own. In fact, the falsely reported high balance of approximately $11,000.00 was a result of the error committed by Amex alone.

35.    Plaintiff corresponded with Amex, requesting that the Account balance be reported be modified to reflect the correct balance and that the additional interest charges she acquired as a result of the incorrect balance be refunded.

36.    On or about January 9, 2023, Amex responded to Plaintiff's correspondences and verified that the Account was being reported correctly. In addition, Amex stated that they would not be refunding the additional interest Plaintiff accrued as a result of Amex's incorrect reporting of the Account balance (hereinafter, "Amex's Response to Plaintiff's Correspondence"). Please see attached a true and correct copy of Amex's Response to Plaintiff's Correspondence and relevant enclosures labeled as Composite **Exhibit "A"**.

37.    More specifically, Amex admitted to inadvertently charging Plaintiff's Account and only resolving the issue of the incorrect Account balance by reimbursing Plaintiff. However, they did not resolve the issue of the incorrect reporting of the high balance on the Account of approximately $11,000.00.

38.    Immediately following Amex's response, Plaintiff was able to verify that the high balance for the Account was still being reported incorrectly, with a high balance of approximately $11,000.00, on his credit reports from Equifax, Experian, and Trans Union.

## PLAINTIFF'S FIRST DISPUTE

39.    On or about February 26, 2024, and with the assistance of her attorneys, Plaintiff sent a letter to Equifax, Experian, and Trans Union requesting all the information in her credit files, disputing Defendants' credit reporting of the Account, advising that the Account should not be reported with a high balance of approximately $11,000.00 pursuant to the admitted error by Amex's and demanding that Equifax, Experian, and Trans Union investigate and update accordingly (hereinafter, "Plaintiff's First Dispute"). Please see attached a true and correct copy of Plaintiff's First Dispute and relevant enclosures labeled as Composite **Exhibit "B"**.

40.    Plaintiff's First Dispute provided sufficient information to allow Equifax, Experian and Trans Union to identify Plaintiff's credit file, including Plaintiff's name, date of birth, last four digits of her social security number, and her current address. *See* Ex. B.

41.    Additionally, Plaintiff's First Dispute included a copy of Amex's Response to Plaintiff's Correspondence in which Amex admits to inadvertently charging Plaintiff's Account and verifying the high balance of approximately $11,000.00 being inaccurately reported to the national credit bureaus.

42.    Equifax, Experian, and Trans Union received Plaintiff's First Dispute.

43.    Experian communicated Plaintiff's First Dispute to Amex, including all enclosed documents.

44.    Amex received Plaintiff's First Dispute from Experian.

45.    Amex received copies of all documents enclosed with Plaintiff's First

Dispute.

46. On or about March 2024, Experian acknowledged Plaintiff's First Dispute. However, Experian continued to report the Account with an inaccurate high balance.

47. More specifically, despite Plaintiff's First Dispute, Experian advised/showed that Amex and Experian still reported the Account with a high balance of approximately $11,000.00.

48. Notably, Equifax and Trans Union failed to respond to Plaintiff's First Dispute, or even mark the Account as disputed, even though there was proof of delivery of Plaintiff's First Dispute to both Defendants'. Respectively, proof of delivery for Equifax was on March 16, 2024, and proof of delivery for Trans Union was on March 15, 2024.

49. Clearly, Amex, Equifax, Experian, and Trans Union each failed to conduct a reasonable investigation in response to Plaintiff's First Dispute, because if Amex, Equifax, Experian, and Trans Union had conducted reasonable investigation and re-investigations, Amex, Equifax, Experian and Trans Union would have known that the high balance being inaccurately reported on the Account was a result of a mistake made by Amex and should therefore have been corrected to reflect the accurate Account high balance.

50. Amex's, Equifax's, Experian's, and Trans Union's failure to conduct reasonable investigations and re-investigations into Plaintiff's First Dispute was unreasonable given the information provided in Plaintiff's First Dispute.

51.    On or about May 1, 2024, Plaintiff received a letter from Amex advising her that the Account had been transferred to Transworld Systems Inc. for collections. In addition, attached was a debt collection letter from Transworld Systems Inc. advising Plaintiff that she owes a total debt of $6,726.29 on the Account as of May 1, 2024 (hereinafter "Transworld's Collection Letter"). Please see attached a true and correct copy of Transworld's Collection Letter and relevant enclosures labeled as Composite **Exhibit "C"**.

52.    On or about May 14, 2024, Plaintiff requested updated copies of her credit reports from Equifax, Experian, and Trans Union.

53.    Despite Plaintiff's First Dispute, Equifax failed to mark the Account as disputed and *still* reporting the Account inaccurately with an alleged high balance of approximately $11,000.00.

54.    Despite Plaintiff's First Dispute, Experian failed to mark the Account as disputed and *still* reporting the Account inaccurately with an alleged high balance of approximately $11,000.00.

55.    Despite Plaintiff's First Dispute, Trans Union failed to mark the Account as disputed and *still* reporting the Account inaccurately with an alleged high balance of approximately $11,000.00.

56.    As of May 2024, Equifax, Experian, and Trans Union were *still* reporting the Account inaccurately with an alleged high balance of approximately $11,000.00.

## DAMAGES

57.    As a result of Defendants' unlawful reporting of the Account, Plaintiff dealt with the stress and anxiety of feeling hopeless, believing that she would be denied credit as a result of the erroneous and incorrect reporting of the Account, and that Plaintiff would either be denied credit or pay higher interest rates in the event she could obtain financing.

58.    Following Plaintiff's First Dispute, Equifax, Experian, and Trans Union each generated and published Plaintiff's credit reports containing the inaccurate high balance on the Account.

59.    Overall, Plaintiff suffered damage to her credit reputation as a result of Defendants' conduct.

60.    Plaintiff retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiff is obligated to pay her attorneys a reasonable fee for their services.

61.    The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs Plaintiff, should Plaintiff prevail in this matter against Defendants.

62.    As a result of Defendant's conduct, actions, and inactions, Plaintiff was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports

that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

63. Additionally, as a result of Defendants' actions, Plaintiff suffered emotional distress, anxiety, inconvenience, frustration, annoyance, fear, and confusion, believing that despite disputing the inaccurate reporting of the Account, Plaintiff must simply endure Defendants' unlawful reporting of the Account.

**COUNT ONE**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)**
**(as to Amex)**

Plaintiff re-alleges paragraphs one (1) through sixty-three (63) as if fully restated herein and further stated as follows:

64. Amex is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiff's credit reports, failing to fully and properly investigate/re-investigate Plaintiff's numerous disputes, failing to review all relevant information regarding the same (which included their own documents), and failing to request that Equifax, Experian, and Trans Union correct the reporting of the Account on Plaintiff's credit reports and credit file after investigating/re-investigating Plaintiff's repeated disputes.

65. As described above, Amex erred by inadvertently charging Plaintiff's Account and as a result reporting an alleged high balance of approximately $11,000.00 to Equifax, Experian, and Trans Union. *See Exhibit A.*

66. Despite Plaintiff *never* having reached the alleged $11,000.00 credit limit being reported by Amex through her own actions, Amex failed to report the Account to the national credit bureaus with an accurate high balance, and instead reported the Account with the alleged high balance of approximately $11,000.00.

67. In or around February 2024, Amex received notice of Plaintiff's First Dispute from  Experian, and Amex received copies of all the documents enclosed in Plaintiff's First Dispute.

68. Following Plaintiff's First Dispute, Amex confirmed and/or verified its false reporting to Equifax, Experian, and Trans Union showing that the Account had an alleged high balance of approximately $11,000.00, and Amex failed to report the Account with the accurate high balance.

69. The alleged high balance of approximately $11,000.00 was the result of the error made by Amex which they admitted to and attempted to resolve by reimbursing her for the funds she was inadvertently charged with. *See Exhibit A*.

70. As such, it is inaccurate and/or materially misleading to report that the Account high balance was approximately $11,000.00.

71. Amex's refusal to request that Equifax, Experian, and Trans Union correct the tradelines associated with the Account was done intentionally, willfully, and/or knowingly as Amex clearly possessed knowledge of the error made on their part and the obligations placed upon themselves to resolve the complications for Plaintiff induced by the error.

72. Amex's investigations/re-investigations were not conducted in good

faith.

73.    Amex's investigations/re-investigations were not conducted reasonably.

74.    Amex's investigations/re-investigations were not conducted using all the information reasonably available to Amex.

75.    As a result of Amex's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit applications, and she was deterred from making further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Amex's derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with inaccurate high balance information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

76.    Amex's conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiff as stated herein.

77.    Amex's actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiff to actual damages, statutory damages, and punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**

**(as to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through sixty-three (63) as if fully restated herein and further stated as follows:

78.    Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiff.

79.    Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports regarding the Account.

80.    Despite Plaintiff *never* having reached the alleged $11,000.00 credit limit on the Account being reported by Amex through her own actions and despite Plaintiff's repeated disputes advising Equifax, Experian, and Trans Union of the same, Equifax, Experian, and Trans Union continued to unlawfully report the Account with an allegedly high balance in erroneous amounts resulting in the Account being reported as a derogatory, negative, or adverse account.

81.    More specifically, despite Plaintiff not being responsible for the alleged high balance of approximately $11,000.00 being reported by Amex—and despite Plaintiff notifying Equifax, Experian, and Trans Union of the same through Plaintiff's First Dispute—Equifax, Experian, and Trans Union continued to the report the Account with an inaccurate high balance.

82. Such reporting of the Account is false and evidences Equifax, Experian, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit reports and credit file.

83. The alleged high balance of approximately $11,000.00 was the result of the error made by Amex which they admitted to and attempted to resolve by reimbursing her for the funds she was inadvertently charged with. *See Exhibit A*.

84. As such, it is inaccurate and/or materially misleading to report that the Account high balance was approximately $11,000.00.

85. Between the end of 2023 and the date of this Complaint, Equifax, Experian, and Trans Union each generated and published Plaintiff's credit reports to Plaintiff's creditors and potential leaders including the above-referenced inaccurate, incomplete, and/or materially misleading information.

86. Overall, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit reports and credit files when investigating/re-investigating Plaintiff's disputes of the above-referenced inaccuracies contained in her Equifax, Experian, and Trans Union credit reports and credit file.

87. As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit, was deterred from making additional/further credit applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to

further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline account.

88. Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

89. Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

## COUNT THREE
## FAIR CREDIT REPORTING ACT —
## VIOLATION OF 15 UNITED STATES CODE
## SECTIONS 1681i(a)(1), i(a)(4), and i(a)(5)
**(as to Equifax, Experian, and Trans Union)**

Plaintiff re-alleges paragraphs one (1) through sixty-three (63) as if fully restated herein and further stated as follows:

90. Equifax, Experian, and Trans Union are each subject to, and violated the provisions of, 15 United States Code, Section 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) by: (1) failing to conduct reasonable investigations/re-investigations of Plaintiff's disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiff's credit

reports and credit files; (2) failing to review and consider all relevant information received in Plaintiff's disputes, including all relevant attachments; and (3) failing to update or delete any information that was the subject of Plaintiff's disputes found to be inaccurate or that could not be verified.

91.     Specifically, Equifax, Experian, and Trans Union willfully and/or negligently refused to properly investigate/re-investigate Plaintiff's consumer reports upon receiving Plaintiff's disputes, as described herein.

92.     After receiving Plaintiff's First Dispute, Equifax, Experian, and Trans Union each failed to request any documents from Amex regarding the Plaintiff and the Account in response to any of Plaintiff's disputes, and Equifax, Experian, and Trans Union wholly ignored the documents submitted by Plaintiff with his disputes.

93.     Rather than conduct its own, independent investigation/re-investigation regarding Plaintiff's disputes, Equifax, Experian, and Trans Union solely relied on Amex's blanket and parroted assertions that Defendants were entitled to report the Account with an inaccurate alleged high balance.

94.     Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiff's disputes was done in bad faith.

95.     Equifax's, Experian's, and Trans Union's investigation/re-investigations were not conducted in such a way as to assure whether information regarding Plaintiff and the Account was inaccurate and Equifax, Experian, and Trans Union failed to subsequently correct the inaccurate information in Plaintiff's credit reports and credit files.

96.    Such reporting is false and evidences Equifax's, Experian's, and Trans Union's respective failures to conduct reasonable investigation/re-investigations of Plaintiff's repeated disputes.

97.    Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted reasonably.

98.    Equifax's, Experian's, and Trans Union's investigation/re-investigations merely copied, parroted, and relied upon the inaccurate Account information conveyed by Amex.

99.    Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted in good faith.

100.    Equifax's, Experian's, and Trans Union's investigation/re-investigation procedures are unreasonable.

101.    Equifax's, Experian's, and Trans Union's investigation/re-investigations of Plaintiff's disputes were not conducted using all information and documents reasonably available to Equifax, Experian, and Trans Union.

102.    Equifax's, Experian's, and Trans Union's investigation/re-investigations were per se deficient by reason of these failures in Equifax's, Experian's, and Trans Union's reinvestigations of Plaintiff's disputes and the Account.

103.    As a result of Equifax's, Experian's, and Trans Union's conduct, actions, and inactions, Plaintiff suffered damage to her credit reputation and credit worthiness, was denied credit, was deterred from making additional credit

applications as she believed she would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Account and did not wish to further damage her credit score with futile credit inquires, and she was continually evaluated for credit using consumer reports that reported the Account with late payment information resulting in the Account being reported as a derogatory, negative, or adverse tradeline accounts.

104.    Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiff as stated herein.

105.    Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Sections 1681i(a)(1), 1681i(a)(4), and 1681i(a)(5) constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiff to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiff respectfully requests an entry of:

a.    Judgment against Amex, Equifax, Experian and Trans Union for maximum statutory damages for violations of the FCRA;

b.    Actual damages in an amount to be determined at trial;

c.    Compensatory damages in an amount to be determined at trial;

d.    Punitive damages in an amount to be determined at trial;

e.    An award of attorney's fees and costs; and

f.    Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiff hereby gives notice to Defendants and demands that Defendants and

their affiliates safeguard all relevant evidence—paper, electronic documents, or data—

pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

/s/ *Jon P. Dubbeld*
**Jon P. Dubbeld, Esq., FBN 105869**
11300 4th Street N., Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
jdubbeld@swift-law.com
jmurphy@swift-law.com
*Counsel for Plaintiff*